IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

**LEIGH ANN SPURLOCK,**

    **Plaintiff,**

vs.                                                                 **CIVIL ACTION NO. 2:15-13058**

**CAROLYN W. COLVIN**
**ACTING COMMISSIONER OF**
**SOCIAL SECURITY,**

    **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Acting Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. By Order entered January 5, 2016 (Document No. 10.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross-Motions for Judgment on the Pleadings. (Document Nos. 11 and 12.)

The Plaintiff, Leigh Ann Spurlock (hereinafter referred to as "Claimant"), protectively filed her applications for Title II and Title XVI benefits on September 9, 2012, alleging disability since May 1, 2007 due to osteoarthritis, fibromyalgia, arthritis, and depression. (Tr. at 15, 236-239, 240-243, 259.) Her claims were denied initially on November 7, 2012. (Tr. at 159-163, 164-168.) Claimant's Title II claim was denied again upon reconsideration on February 12, 2013 (Tr. at 171-173.), however, her Title XVI claim was approved on March 19, 2013 with an amended onset date of September 9, 2012, the date she filed her application for benefits. (Tr. at 187-200, 289-290.)

Claimant filed a Request for Hearing for her Title II claim on February 27, 2013 (Tr. at 174-175.); an administrative hearing was held on April 22, 2014 before Administrative Law Judge ("ALJ") Thomas J. Sanzi. (Tr. at 34-63.) As a preliminary matter, Claimant amended her alleged onset date to April 1, 2009. (Tr. at 37-38.) The ALJ then heard the testimonies of Claimant (Tr. at 38-54.) and Vocational Expert ("VE") Casey B. Vass. (Tr. at 54-62.) On June 3, 2014, the ALJ entered a decision denying benefits. (Tr. at 12-33.)

The ALJ's decision became the final decision of the Commissioner on August 7, 2015 when the Appeals Council denied Claimant's Request for Review. (Tr. at 1-7.) On September 10, 2015, Claimant timely brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Standard

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2015). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1

to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2015). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> (C) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and

> how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[1] Fourth, if the claimant's

---

[1] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant last met the requirements for insured worker status through March 31, 2010. (Tr. at 17, Finding No. 1.) Moreover, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since the alleged onset date, April 1, 2009 through March 31, 2010. (Tr. at 17, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from the following severe impairments: osteoarthritis; fibromyalgia; obesity; affective disorder; and anxiety disorder. (Tr. at 18, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix

1. (Tr. at 18, Finding No. 4.) The ALJ then found that Claimant through the date last insured ("DLI") had a residual functional capacity ("RFC") to perform sedentary work as defined in the regulations

> except she could never climb ladders, ropes, or scaffolds and could only occasionally climb ramps and stairs. The claimant was limited to occasional balancing, stooping, crouching, kneeling, and crawling. She was required to avoid concentrated exposure to extreme cold, extreme heat, excessive vibration, and unprotected heights, and she had to avoid concentrated use of moving machinery. The claimant was limited to performing detailed but not complex tasks. (Tr. at 20, Finding No. 5.)

At step four, the ALJ found that through the DLI, Claimant was capable of performing past relevant work as a transcriptionist, personnel clerk, and receptionist; the ALJ found that Claimant's past relevant work did not require the performance of work-related activities precluded by Claimant's RFC. (Tr. at 28, Finding No. 6.) On this basis, benefits were denied. (Tr. at 29, Finding No. 7.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize

the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on September 8, 1956, making her 53 years old as of her alleged onset date, defined by the Regulations as "an individual closely approaching advanced age." (Tr. at 39.) See 20 C.F.R. § 404.1563. She has a high school education (Tr. at 260.) and past work as a cashier/receptionist, transcriptionist, and personnel clerk. (Tr. at 28, 260, 265-272.)

The Medical Record

As a preliminary matter, it is important to note that the ALJ found that "the record lacks objective medical evidence to support a finding of disability during the period at issue.[2]" (Tr. at 22.) The Claimant's appeal is limited to the ALJ's failure to account for his finding her moderate mental restriction (in social functioning) in his RFC and/or failure to explain why it was unnecessary, discussed below. Accordingly, the undersigned has considered all evidence of record, including the medical evidence[3], with particular concentration on that evidence pertaining to Claimant's arguments during the period of time subject to this appeal, and discusses it below.

    Nilima Bhirud, M.D.:

---

[2] The period at issue is April 1, 2009 through March 31, 2010. (Tr. at 15.)
[3] It is noted that Claimant submitted additional medical records from Mely Kim, M.D., which covers a period of January 24, 1996 through September 13, 2006 to the Appeals Council (Tr. at 416-469.); the undersigned further notes that these records pertain to a period predating Claimant's amended onset date and occurred prior to periods of substantial gainful activity (Tr. at 21.), as well as to the relevant period, therefore, have no significant bearing on the issue on appeal. See, 20 C.F.R. § 404.1520(a)(4)(i). The records are notable insofar as they indicate Claimant was treated for depression symptoms with medication.

The medical records provide that Claimant treated with Dr. Bhirud from February 23, 2007 through February 5, 2014 primarily for symptoms related to fibromyalgia.[4] (Tr. at 323-355, 395-415.) During the period of time subject to this appeal, a treatment noted dated May 4, 2009 indicated that Claimant complained of pain all over her body, and cold weather made her symptoms worse, however, "Darvocet takes the edge off it." (Tr. at 340.) A treatment note dated August 7, 2009 indicated that Claimant continued to have pain in upper and lower extremities, but she was going to Weight Watchers and lost seven pounds; medication was continued. (Tr. at 341.) By December 3, 2009, Claimant reported she has been going to Weight Watchers, and medication was continued. (Tr. at 342.) A note dated February 4, 2010 indicated that Claimant's fibromyalgia was bad, although she did not take pain medication that day. (Tr. at 343.) The last treatment note from the relevant period, dated April 1, 2010, indicated that Claimant reported that she was sticking to her diet and "is now exercising." (Tr. at 344.)

Beginning with a treatment note dated August 3, 2010 and continuing, Claimant complained of symptoms related to depression, anxiety, panic attacks, paranoia upon leaving her residence, crying spells, and a history of child abuse; Claimant was prescribed Prozac, Klonopin, Abilify, and Effexor. (Tr. at 23, 345.)

Prestera Center East:

Claimant began more formal mental health treatment on February 22, 2012 at the Prestera Center for Mental Health Services, for treatment for her depression, anxiety and agoraphobia. (Tr. at 356-386.) Claimant reported an improvement with symptoms by April 17, 2012, and continued

---

[4] The ALJ noted that Claimant's representative conceded that the records lack clinical evidence of positive fibromyalgia trigger points for the relevant time period to satisfy the requirements of Social Security Ruling 12-2p. (Tr. at 21.)

to help or improve her symptoms, specifically with agoraphobia, through December 2012 with medication. (Tr. at 23-24, 352-354, 373-375, 383-385, 397-410.)

State Agency Medical Consultant:

On November 1, 2012, Pedro F. Lo, M.D., reviewed the evidence in connection with Claimant's initial application, and on January 4, 2013, Rogelio Lim, M.D. reviewed the evidence on reconsideration. (Tr. at 113-115, 123-125, 136-138, 149-151.) They provided a physical residual functional capacity assessment wherein Claimant could occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, stand/walk about three hours in an 8-hour workday, sit about six hours in an 8-hour workday, unlimited push/pull other than for lift/carry, occasionally climb ramps/stairs, balance, stoop, kneel, crouch and crawl, and never climb ladders/ropes/scaffolds. The other limitations were that Claimant should avoid concentrated exposure to extreme cold/heat, and vibration, and moderate exposure to hazards. (Id.) On February 5, 2013, at Dr. Lim opined Claimant was disabled.[5] (Tr. at 155.)

State Agency Psychological Consultant:

On October 29, 2012, John Todd, Ph.D., a state agency psychologist, reviewed the evidence in connection with Claimant's initial application, and opined that she had no severe mental impairment. (Tr. at 110-112, 120-122.) At the reconsideration level, on January 3, 2013, Holly Cloonan, Ph.D., opined that Claimant's records indicated a moderate difficulty in maintaining concentration, persistence, or pace, with mild difficulties in activities of daily living and maintaining social functioning, and no repeated episodes of decompensation (Tr. at 134, 148.); Dr. Cloonan opined that Claimant was "able to learn, remember and perform work-like activities

---

[5] This is with reference to Claimant's SSI claim only.

in setting with no more than occasional and superficial contact with the public and with coworkers" and "able to learn, recall and perform detailed but not complex task instructions". (Tr. at 138-140, 152-153.) On January 10, 2013, Michael Bohnert, M.D. provided a Psychiatric Review Technique, agreeing with the mental RFC assessment. (Tr. at 387-390.)

The Administrative Hearing

    Claimant's Testimony:

Claimant testified she last worked as a cashier/receptionist but had to leave the position because she was ill and missing "a lot of work." (Tr. at 41-42.) Previously, she indicated she worked as a service representative at a temporary service and as a medical transcriptionist. (Tr. at 42-43.) Claimant stated she was no longer able to work due to arthritis, fibromyalgia, and agoraphobia. (Tr. at 45.) She explained the fibromyalgia made her feel like she had the flu all the time, and she had a fear of leaving her home due to agoraphobia. (Tr. at 48.) She stated she did not handle stress well and has struggled with symptoms of anxiety since the early 2000s. (Tr. at 54.) Claimant stated her knees, hips, and hands ached constantly, and she had difficulty with sitting, standing, and walking. (Tr. at 48.)

    Casey B. Vass, Vocational Expert

The VE testified Claimant's past work included work as a cashier (DOT No. 211.463-010) at the unskilled, light exertional level and as a receptionist (DOT No. 237.367- 038), a transcriptionist (DOT No. 203.582-066), and a personnel clerk (DOT No. 209.362-026) at the semi-skilled, sedentary exertional level. (Tr. at 56.) The ALJ asked the VE to consider a hypothetical individual with Claimant's vocational profile and RFC. (Tr. at 57.) The VE responded the individual would be unable to perform work as a cashier but could perform the jobs of

receptionist, transcriptionist, and personnel clerk both as described and as customarily performed in the national economy. (Tr. at 57-58.)

Claimant's Challenges to the Commissioner's Decision

Claimant argues that the ALJ erred by failing to account for his finding that Claimant had moderate difficulties in social functioning either by including this limitation in his hypothetical to the VE, or by explaining why it was unnecessary in his RFC assessment, thus necessitating remand pursuant to Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015). (Document No. 11 at 6-9.)

Claimant contends that the ALJ's RFC assessment included only one mental limitation: "The claimant was limited to performing detailed but not complex tasks" which is inconsistent with the ALJ's finding Claimant had moderate difficulties in social functioning. (Id. at 8.) Claimant argues that the ALJ's omission of her moderate difficulties in social functioning in the controlling hypothetical to the VE, and lack of explanation for the omission, precludes meaningful review as to whether Claimant could perform past relevant work. (Id. at 9.) Because the ALJ relied upon the VE's opinion that Claimant could perform her past work, this omission is reversible error, and warrants remand to correct it. (Id.)

The Commissioner responds that Claimant did not prove she was disabled during the narrow period claimed for disability benefits, and that the decision is supported by substantial evidence. (Document No. 12 at 4-13.) The Commissioner argues that Claimant was previously awarded her SSI claim in March 2013 using the onset date of September 9, 2012, and even though she became technically "disabled" as of September 2012, she could not qualify for DIB because it is never sufficient to show a non-disabling condition that later worsens into a disability, whether technically or otherwise, after the expiration of the insured status date. 42 U.S.C. §§ 423(a)(1)(A),

(c)(1); 20 C.F.R. §§ 404.130, 404.131(a), 404.315(a)(1). (Id. at 4.) The Commissioner argues that this appeal only concerns the narrow closed period from April 1, 2009, the alleged onset date, through March 31, 2010, the DLI. (Id. at 5.) Further, the Commissioner points out that the only medical evidence pertaining to this closed period consists of five pages of brief treatment notes by Claimant's primary care physician, N. Bhirud, M.D, between March 2009 and April 2010. (Id.) The Commissioner also argues that Claimant started treatment with Dr. Bhirud since early 2007, for complaints of pain "all over her body", and that she returned to his care every three months for medication refills for her pain symptoms. (Id.) The Commissioner stated that a treatment note dated March 2009, close to Claimant's alleged onset date, indicated that she could do housework, with rest in between despite hurting all over; and in December 2009, through March 31, 2010, Claimant reported that she was attending Weight Watchers and was exercising. (Id. at 5-6.) The Commissioner argues that there are no mental health records pertaining to complaints of, or treatment for, limitations in social functioning during that narrow period; State psychological consultants at the initial level of review on March 6, 2009, and at reconsideration on June 18, 2009, concluded that Claimant had no severe mental impairment. (Id. at 6.) Because Claimant has not provided any objective medical evidence supporting work-related social restrictions from this closed time period, she is not considered disabled per 42 U.S.C. §§ 423(d)(1)(A), (5)(A) ("An individual shall not be considered to be under a disability unless [s]he furnishes such medical and other evidence of the existence thereof as the Commissioner may require."); see also Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). (Id. at 8.) In that regard, the Commissioner contends that the ALJ did not err when he did not include her moderate limitation in social functioning. (Id.)

Therefore, contrary to Claimant's contention that the ALJ's only assessed restriction

related to "performing detailed but not complex tasks" failed to address his finding her moderately restricted in social functioning, the Commissioner argues that the ALJ sufficiently explained that " 'additional limitations were not warranted . . . during the relevant period' based on the 'generally mild mental health findings' and post DLI treatment, which showed immediate 'improvement with medication.'" (Id. at 8-9.) In short, the Commissioner contends that despite Claimant's reliance on Mascio in support of her argument for remand, the ALJ herein adequately explained why no further limitations were necessary in the RFC assessment, and moreover, unlike the situation presented in Mascio, in this case, Claimant provided no objective medical evidence of her mental impairment that the ALJ herein failed to address. (Id. at 10.) Also, the Commissioner points out that the medical evidence during the period at issue here also fails to establish limitations that existed for twelve continuous months as required under 20 C.F.R. § 404.1520(a)(4)(ii); 20 C.F.R. § 404.1509. (Id.) The Commissioner asks the Court to find the ALJ's RFC assessment/hypothetical unimpeachable pursuant to Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005) because the RFC adequately reflects the sufficient evidence supporting same. (Id. at 12.)

Finally, the Commissioner argues that the ALJ's confusion between the current evidentiary period and the closed narrow evidentiary period at issue at steps two and three was inadvertent and harmless because there are no facts upon which Claimant can recover. Brown v. Astrue, 649 F.3d 193, 196 (3d Cir. 2011). (Id.) Further, the Commissioner argues that the ALJ's mistaken finding of moderate social restrictions does not detract from this Court's ability to meaningfully review any additional social work-related functional restrictions omitted during the narrow period as remand will be futile because it would not change the outcome. (Id.) The Commissioner points out that a perfect decision is not necessary, only a decision supported by substantial evidence, which

13

is what occurred in this case.[6] (Id. at 13.)

Analysis

The undersigned agrees with the Commissioner that <u>Mascio v. Colvin,</u> 780 F.3d 632 (4th Cir. 2015) is inapposite to the case at bar: the ALJ properly found that regarding Claimant's mental impairments, "it is noteworthy that the objective medical record is absent evidence of treatment or use of medication, even in conjunction with primary care treatment, until after the claimant's date last insured." (Tr. at 23, 27.) <u>See</u>, also, 42 U.S.C. §§ 423(d)(1)(A), (5)(A); <u>Bowen v. Yuckert</u>, 482 U.S., 137, 146 n.5 (1987). Further, the ALJ found no "evidence of psychiatric symptoms or clinical findings during the relevant period" and no records suggesting "psychiatric abnormalities or treatment prior to the date last insured" although he did take into consideration Claimant's "recent treatment" and her "testimony regarding a long history of depression and anxiety related symptoms", and therefore limited Claimant to "performing detailed but not complex tasks." (Tr. at 25.)

The ALJ further explained that "additional limitations were not warranted, as examinations revealed normal responses, fair insight and judgment, a reactive affect, and normal alertness and orientation." (<u>Id</u>.) In short, unlike the situation presented in <u>Mascio</u>, there was no objective medical evidence for the ALJ to develop or explain to justify his findings, however, he did discuss the evidence developed after Claimant's date last insured "[i]n order to place the claimant's allegations in proper perspective." (Tr. at 22.) The record is clear that Claimant did not furnish the Commissioner with medical evidence pertaining to the relevant period that she was disabled; the only evidence the ALJ had before him pertaining to her mental impairments was "yielded after"

---

[6] <u>Barnhart v. Thomas</u>, 124 S.Ct. 376, 382 (2003).

her DLI (Id.), however, this caused Claimant no prejudice. The undersigned agrees with the Commissioner that the RFC assessment is unimpeachable in the spirit of Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005) because it is supported by substantial evidence and there are no facts that can be considered that would change the outcome of the decision.

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Claimant's Motion for Judgment on the Pleadings (Document No. 11.), **GRANT** the Defendant's Motion for Judgment on the Pleadings (Document No. 12.), and **AFFIRM** the final decision of the Commissioner.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933

(1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Copenhaver, and this Magistrate Judge.

The Clerk of this court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: October 24, 2016.

_____
Omar J. Aboulhosn
United States Magistrate Judge